## IN THE INTEREST OF: Y.F.W., a minor
### Case No. 82-90-CJ (2-420)
Eighth Judicial Circuit, Bradford County

January 7, 1986

### APPEARANCES OF COUNSEL

**Frederick L. Kobenlein** for the Department of Health and Rehabilitative Services.

**Salvatore B. Mollica** for H.W.

**Bobbie Lee Eubank** for guardian ad litem.

### OPINION OF THE COURT

GEORGE H. PIERCE, Acting Circuit Judge.

THIS CAUSE came on to be heard before the undersigned judge on December 18, 1985, upon the sworn petition dated November 15, 1985, and filed November 20, 1985, by Meriba Green, an authorized representative of the Department of Health and Rehabilitative Services, hereinafter referred to as the Department of HRS, pursuant to Chapter 39, Florida Statutes, and the following were present for the hearing:

1. Frederick L. Koberlein, attorney for the Department of HRS.

2. Salvatore B. Mollica, Esquire, attorney for natural father, H.W.

3. Bobbie Lee Eubank, Esquire, attorney for the Guardian ad Litem Program.

4. H.W., natural father of said minor child, Y.F.W.

5. Janelle P. Reese, guardian ad litem for the child.

6. Sharon Sheetz, guardian ad litem for the child.

7. Meriba Green, representing the Department of HRS.

8. Judith M. Levy, Ph.D., clinical psychologist.

9. Susan Starling, schoolteacher in the Bradford County school system.

10. G.W., niece of H.W.

11. J.E., sister of H.W.

12. M.W., sister of H.W.

Upon being fully advised in the premises, and the evidence having been received by the court, the court finds as follows:

1. Y.F.W. is a minor child, having been born March 20, 1979, at Shands Teaching Hospital, Alachua County, Gainesville, Florida, according to the certified Certificate of Live Birth having been previously filed with this court.

2. The natural father, H.W., was divorced from E.W. in May 1984 in Bradford County, Florida, and currently resides at . . ., and words nights at a dairy making approximately $195.00 per week.

3. The child, Y.F.W., has been in the care of the Department of HRS since being adjudicated dependent September 1, 1982.

4. It was proven in July 1984 and the child was permanently committed insofar as the natural mother, E.W., was concerned.

5. The Department of HRS has proven by clear and convincing evidence that the child should be permanently committed.

6. The natural father, H.W., has completely failed to comply with the order of the court dated February 21, 1985.

7. H.W., the father, has had only one visit since April 7, 1985, with the said child, that date being September 13, 1985. He has further been unable to maintain a stable home and job and provide child care arrangements. H.W. has been evaluated by two psychologists, Dr. Nancy Haynes and Dr. Judith Levy.

8. The court finds that H.W. is incapable of parenting the said minor child by himself, either now or in the future, and there has been nothing but instability insofar as the child is concerned.

9. That of the three grounds of permanent commitment, two—abandonment and neglect—have been proven by the clear and convincing evidence submitted to the court.

a. In considering the abandonment, it has been shown that the parent must be able to carry out the duties of parenthood, thereby ruling out terminations based on poverty or the parent's mental or physical illness, that prevent the parent from being able to support and communicate; the court realizing that marginal efforts to support and communicate do not suffice to prevent termination. The facts are now shown to this court that the father has been able to support the said minor child, and has the ability, but makes no provision for the child support, and makes no real effort to communicate. In this regard, the ability to communicate and support must be considered by this court. The court takes into consideration Mr. Wilson's own background of foster care as a driving motivation for the return of the child, but although he presents a sincerity for this desire, it will simply take more skills and stability than he has demonstrated for raising a youngster and his inability to do so has been shown over and over again.

b. Insofar as neglect, neglect requires both a finding of financial ability and a failure by the parent to provide food, clothing or shelter, and that it may be willful or negligent omission. If this is a negligent parent, it must indicate that neglect includes negligent acts and omissions that deprive the child of basic needs. Since the last order of this court, it is found that there is instability of keeping a job, or the ability to keep a job, and the moving around of the individual from one location to another, plus the fact that he does not have a driver's license, and the ability to transport or be transported to see the child in any way at all. The court has considered from the testimony in terminating the parental rights, that of the parental relationship in the current family unit and the present competency as parent. This court finds that neglect is substantial, and in this matter, poses a serious detriment to the welfare of this minor child. Although there was family support at this hearing, there was nothing shown that they were willing to take and raise the said child as their own.

c. The court further finds that the case law indicated that the expression of disinterest by a natural parent seems to be a pivotal factor in determining abandonment, and although disinterest is not shown in one respect, it is shown in that the father does not understand or does not have the ability to understand, nor the skills and stability to care for this minor child.

**83**

d. The ability to communicate and support has been considered by several courts, and this court at this time is considering the same as it is the considered opinion of this court that this particular parent is unable to understand all of the factors necessary for rearing a child, and it amounts to emotional neglect in this court's eyes.

e. This court has observed this particular case since February of 1985, and finds and takes the view that Florida requiring a strict and very specific fact-finding case, this case is an example and it does justify permanent termination.

f. The decision to terminate parental rights has included the consideration of the parental relationship in the current family unit and present competency of the parent.

10. The court further finds in regard to the best interest of the minor child, the law requires both a showing of abuse, neglect or abandonment, and a consideration for the best interest of the child. In this particular case, best interest of the child is not to be measured in terms of material wealth, and the state has demonstrated a compelling state interest to sever the parent-child relationship.

11. The court further finds in testimony that the natural father is not likely to rehabilitate himself and he is quite unstable and would not provide the basic necessities of food, clothing and shelter nor the proper emotional stability of the proper development of this minor child, Y.F.W.

a. The court has considered the parental relationship and the present competency of the father and the ability of the father to care for the said child. The court has not only considered the mere economic standards and finds that the care of the minor child is substantial and the neglect of the said child will continue on behalf of the father. The totality of the circumstances has convinced this court that insofar as the father is concerned, the child should be placed in the permanent care, custody and control of the Department of Health and Rehabilitative Services.

b. The father has expended little effort to stabilize his life so that the child could be returned to him by the court.

c. This said minor child, at the present time, is not in any condition to go through the traumatic experience of returning to her father as they barely know each other in spite of efforts to have visitation rights with the father.

d. To require the child to renew her relationship with her father would be detrimental to her emotional health and stability.

84

e. Although the father and child both possess the right to family integrity, the state through its police powers and parent patriae power has a valid interest in protecting children and looking out for their best interest.

12. The court further finds that it is manifestly to the best interest of said child to permanently commit the said child to the agency hereinafter named for subsequent adoption, said agency being authorized under laws of the State of Florida to receive permanent commitment of said child and place said child in an adoptive home and to consent to the adoption of said child, and that said agency is willing to accept the said child; that no legal custodian has been appointed by any court for the said child.

ORDERED and ADJUDGED that the dependency of the said minor child, Y.F.W., is hereby affirmed, and the child is hereby permanently committed to the State of Florida, Department of Health and Rehabilitative Services, to continue in foster care for subsequent adoption. It is further

ORDERED and ADJUDGED that the parties are advised that an appeal is authorized by law but must be commenced within thirty (30) days from the date of this order. If the father cannot afford an attorney for an appeal, the court will consider appointing an attorney for him if he will ask the court to do so in writing within ten (10) days from date of this order.